UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

NEWARK VICINAGE

NOT FOR PUBLICATION

| | | |
|---|---|---|
| THADDEUS THOMAS, | : | |
| | : | CIVIL NO. 14cv3719 (SRC) |
| Plaintiff, | : | |
| | : | |
| | : | OPINION |
| v. | : | |
| | : | |
| | : | |
| TRACEY KAMINSKI ET AL., | : | |
| | : | |
| DEFENDANTS, | : | |

Plaintiff is a civilly committed detainee under New Jersey's Sexually Violent Predator Act, confined at East Jersey State Prison. (Compl., ECF No. 1.) Plaintiff submitted a civil rights complaint to this Court, and the Court has granted Plaintiff's request to proceed without prepayment of fees pursuant to 28 U.S.C. § 1915. (Order, ECF No. 2.) This case is now subject to preliminary review by the Court pursuant to § 1915(e)(2)(b).

When a person is proceeding in forma pauperis under 28 U.S.C. § 1915, the statute requires the court to "dismiss the case at any time if the court determines that" the action is frivolous or

malicious; the action fails to state a claim upon which relief may be granted; or the action seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Plaintiff's complaint fails to state a claim upon which relief may be granted. Therefore, the Court will dismiss the complaint.

## I.   BACKGROUND

The first defendant named in the complaint is Tracey Kaminski, identified as "Administrative Major – DOC". (Compl., ECF No. 1 at ¶4(b)). Plaintiff alleged Kaminski failed to supervise officers who abused their authority and disregarded grievances. (Id.) The second named defendant is Sgt. Lowendowski, identified as the "1st Shift Supv. Sgt. DOC". (Id. at 4(c)). Plaintiff alleged Lowendowski knowingly placed Plaintiff in "lock-up" based on false charges and for "using other residents for his own personal reasons." (Id.)

The third defendant is Correctional Officer T. Orange. (ECF No. 1 at 5.) Plaintiff alleged Officer Orange manipulated a resident to fabricate a false story in order to lock Plaintiff up for exercising his First Amendment rights and filing grievances and complaints. (Id.) The fourth defendant is Correctional Officer Williams, whom Plaintiff alleged refused to tell his supervisor that Plaintiff was being locked up on false charges, and instead handcuffed Plaintiff and took him to lock-up. (ECF No. 1 at 6.)

2

The alleged incidents that led to Plaintiff's complaint are as follows. On May 31, 2014, Defendant Williams asked Plaintiff whether he threatened C. Austin's life, and Plaintiff denied the charge. (ECF No. 1 at 8.) Later that day, Defendants Williams and Lowendowski went to Plaintiff's cell, handcuffed him, and took him to "lock-up" for threatening C. Austin, without giving Plaintiff his <u>Miranda</u> rights.[1] (<u>Id.</u>) Plaintiff said everyone knew C. Austin fabricated stories to get others locked up. (<u>Id.</u> at 8-9.) Plaintiff alleged he was put in lock-up without an investigation. (<u>Id.</u> at 9.) Plaintiff was strip searched and body cavity searched by the D.O.C. (<u>Id.</u>) He requested an investigation into whether C. Austin had a history of fabricating stories. (<u>Id.</u> at 10.)

Defendant Williams told Plaintiff he would be out of lock-up in a few days because they knew C. Austin lied, but they had to lock him up under the D.O.C. protocol. (<u>Id.</u> at 11.) Later in the afternoon of May 31, 2014, Officer Francis told Plaintiff that she told her Sergeants that no one threatened C. Austin, and the situation was resolved. (<u>Id.</u> at 12.) Officer Francis called

---

1 Due process, in the context of prison disciplinary proceedings, does not require that a prisoner be given Miranda rights. <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-72 (1974)(describing procedures required for due process in prison disciplinary proceedings).

3

Defendant Lowendowski on May 31, 2014, and told him C. Austin was lying about the threat. (Id.) Plaintiff alleged he nevertheless remained in lock-up under D.O.C. policy, and he would not be eligible for release for 72 hours until seen by "I.A." and D.H.S. staff, to make a determination on a disciplinary sanction regarding Austin's accusations. (Id.)

On June 1, 2014, Officer Robertson told Plaintiff he might be released in a few days. (Id. at 18.) Petitioner alleged his lock-up without a proper investigation and hearing caused what was supposed to be a treatment facility to be a prison facility, because they followed prison policies for lock-up. (Id.) Plaintiff alleged this incident caused him to avoid treatment because he feared false accusations by others. (Id. at 20.)

Also on June 1, 2014, Program Coordinator J. Ottino told Plaintiff there was nothing she could do about Plaintiff's lock-up under the D.O.C. policy of 72 hour T.C.C. status (temporary close custody). (Id. at 20-21.) Plaintiff alleged this policy allowed a civilly committed resident to be treated like a prisoner who committed a second crime and received a second prison sentence. (Id. at 21.)

As of June 2, 2014, Plaintiff was not given a shower or change of clothes or opportunity to make legal calls. (Id.) He saw an

4

Internal Affairs investigator that day and was cleared of all charges. (Id.) Plaintiff would not be released until after the D.O.C. Administrators signed off. (Id. at 22.) Plaintiff alleged violation of his First Amendment right to file grievances or complaints, violation of his due process right to a hearing, and violation of his due process right to remain free from punishment before having been found guilty of violating prison rules. (Id. at 25.) For relief, Plaintiff sought compensation for mental anguish and transfer to another facility. (Id. at 29.)

## II.  STANDARD FOR SUA SPONTE DISMISSAL

Plaintiff is proceeding in forma pauperis in this civil action. Therefore, this Court must review the complaint and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court must liberally construe the complaint in Plaintiff's favor because he is proceeding pro se. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court

5

need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

In Ashcroft v. Iqbal, the Supreme Court revisited the standard for summary dismissal of a complaint that fails to state a claim upon which relief may be granted. 556 U.S. 662 (2009). The Court examined the pleading standard under Federal Rule of Civil Procedure 8(a)(2), noting that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 677. However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A complaint must be dismissed for failure to state a claim if it does not state a plausible claim for relief. Id. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Finally, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to

6

amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002).

### III. 42 U.S.C. § 1983

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

To state a claim for relief under § 1983, a plaintiff must allege two things; first, the violation of a right secured by the Constitution or laws of the United States; and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

### IV. THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

Plaintiff is civilly committed under the New Jersey Sexually Violent Predator Act ("SVPA"). (Compl.) The New Jersey SVPA provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators

7

("SVP"). N.J.S.A. 30:4-27.24 et seq. The facilities designated for SVPS are operated by the New Jersey Department of Corrections ("DOC"). N.J.S.A. 30:4-27.34(a). The New Jersey Department of Human Services ("DHS") provides for their treatment. N.J.S.A. 30:4-27.34(b).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs. N.J.S.A. 30:4-27.25. The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed. Id. The SVPA defines a SVP as:

> a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

The SVPA was amended in 2003, requiring that regulations be promulgated jointly by the DOC and the DHS, in consultation with the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L.1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and

8

specific characteristics of, and treatment protocols related to, sexually violent predators." N.J.S.A. 30:4-27.34(d). Those persons committed under the SVPA shall receive annual review hearings. N.J.S.A. 30:4-27.35. A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge. N.J.S.A. 30:4-27.36.

**V. ANALYSIS**

    A.   Retaliation Claim

Retaliation against a prisoner[2] based on his exercise of a constitutional right violates the First Amendment. Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012)(citing Mitchell v. Horn, 318 F.3d 523, 529-31 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-26 (3d Cir. 2000). To state a First Amendment retaliation claim, a plaintiff must allege (1) that he was engaged in constitutionally protected conduct; (2) he suffered some adverse action at the hands of the prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to

---

2 The Court sees no reason to treat a civilly committed SVP differently than a prisoner in analyzing a First Amendment retaliation claim.

take the adverse action. Bistrian, 696 F.3d at 376 (citing Rauser, 241 F.3d at 333).

Plaintiff properly alleged the first two elements of a retaliation claim. He has not, however, alleged plausible facts to establish the third element of a retaliation claim, that his filing of grievances and complaints was a substantial and motivating factor in the decision to put Plaintiff in TCC on May 31, 2014. On the face of the complaint, Plaintiff alleged Defendant Orange manipulated another resident to fabricate a story to get Plaintiff locked up, but Plaintiff did not plead any facts in support of this allegation. Furthermore, the bare allegation against Defendant Orange is contrary to Plaintiff's allegations that resident C. Austin had a history of fabricating lies to get others locked up "for his own personal reasons." (ECF No. 1 at 8-9.) Plaintiff's complaint is filled with allegations that Austin acted on his own in making false charges against him.

Moreover, Plaintiff alleged when he complained that the charges against him were false, he was told that D.O.C. policy required him to remain on T.C.C. status for 72 hours, at which time a decision would be made on the disciplinary charges. According to Plaintiff, this was in fact what occurred, and he was found innocent of Austin's charges on June 2, 2014. Thus,

10

Plaintiff's real complaint appears to be against enforcement of D.O.C. policy allowing him to be locked up for 72 hours before a determination is made whether he violated prison rules. Thus, the Court will dismiss Plaintiff's First Amendment retaliation claim.

B.   Procedural Due Process Claim

Plaintiff alleged he was placed in lock-up without an investigation or hearing. The Court construes this a procedural due process claim under the Fourteenth Amendment. "Unless the deprivation of liberty is in some way extreme, then the Constitution does not require that a prisoner be afforded any process at all prior to deprivations beyond that incident to normal prison life." Deavers v. Santiago, 243 F. App'x 719, 721 (3d Cir. 2007)(citing Sandin v. Connor, 515 U.S. at 486).

The Third Circuit extended Sandin's foreclosure of procedural due process protections to a prisoner, whose sentence depended on his response to sex offender treatment, and who claimed a procedural due process violation by his wrongful placement in a restricted activities program. Id. (citing Leamer v. Fauver, 288 F.3d 532, 546 (3d Cir. 2002); see also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings). Therefore, Plaintiff's Fourteenth Amendment procedural

due process claim based on the application of the TCC rules is foreclosed, and will be dismissed.

    C.    Substantive Due Process Claims

    The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012). This clause has procedural and substantive components. Kelley v. Johnson, 425 U.S. 238 (1976). The substantive component of the clause protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." Lawrence v. Texas, 529 U.S. 558, 593 n. 3 (2003)(quotations omitted). These fundamental rights include those guaranteed by the Bill of Rights, and other liberty and privacy interests found to be implicit in the concept of ordered liberty, such as the right to marry. Washington v. Glucksberg, 521 U.S. 702, 720 (1997).

    Absent conduct that implicates a specific fundamental right, substantive due process also protects against government conduct that is so egregious that it "shocks the conscience." United States v. Salerno, 481 U.S. 739, 746 (1987.) "Generally, the Fourteenth Amendment requires that civilly committed persons not

12

be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979), within the bounds of professional discretion, Youngberg [v. Romeo, 457 U.S. 307, 321-22 (1982)]." Coker v. Christie, Civ. No. 10-2263(FSH), 2010 WL 2802269, at *6 (D.N.J. July 15, 2010)(footnote omitted).

The Court construes Plaintiff's allegations that he was improperly treated like a prisoner by application of the DOC policies to him, as a civilly committed person, as amounting to punishment in violation of his right to substantive due process. Courts have dismissed similar claims by others who are civilly committed under the NJ SVPA because the Supreme Court held, in Kansas v. Hendricks, 521 U.S. 346, 368-69 (1997) that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed. Belton v. Singer, Civ. No. 10-6462(SDW), 2011 WL 2690595, at *6-7 (D.N.J. July 8, 2011); Barber v. Christie, Civ. No. 10-1888(SRC), 2010 WL 2723151, at *7 (D.N.J. July 7, 2010); Wolfe v. Christie, Civ. No. 10-2083(PGS), 2010 WL 2925145 at *4-5 (D.N.J. July 19, 2010); Coker, 2010 WL 2802269, at *5 (finding the NJ SVPA is essentially the same as the Kansas Act). Plaintiff does not allege his status is different than others who

13

are civilly committed or that he was not segregated from general prison population. Therefore, this claim will be dismissed.

Plaintiff's primary complaint is that he was put in TCC although an immediate investigation would have shown he was innocent of threatening another resident. Temporary close custody "TCC" is defined in the New Jersey Administrative Code. N.J.A.C. 10A:5-7.1. "An inmate may be placed in temporary close custody for a period not to exceed 72 hours unless exceptional circumstances, such as, but not limited to, other information received or other substantial evidence found warrant extension of this time period." N.J.A.C. 10A:5-7.1(a). An inmate can be placed in T.C.C. when there is reasonable suspicion that an inmate is planning a serious violation of correctional facility rules but disciplinary action is premature or when, in the opinion of the Administrator or designee, TCC confinement is required to protect the inmate or others or to protect the security of the correctional facility. N.J.A.C. 10A:5-7.1(b)(1) and (4). The Director of Custody Operations determines the personal property and other services the inmate may have while in TCC. N.J.A.C. 10A:5-7.1(f).

Placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers, 243 Fed. App'x at

14

721 (3d Cir. 2007)(applying standard announced in <u>Sandin</u>, 515 U.S. 472 (1995)); <u>see also</u> <u>Thielman</u>, 282 F.3d 478 ("to state a procedural due process claim deriving from state law, Thielman must identify a right to be free from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of his confinement"). Here, Plaintiff was in TCC based on another inmate's allegation that Plaintiff threatened his life. Plaintiff alleged he was placed in handcuffs, strip searched with visual body cavity search when taken into TCC for 24-hour lock-up and denied a shower, change of clothes or legal phone calls, from May 31, 2014 until June 2, 2014. (ECF No. 1 at 10-11.) This depravation, while seemingly harsh when there is a later finding of no disciplinary infraction, is not an atypical or significant hardship in the context of the ordinary incidents of confinement. <u>See</u> <u>Frazier v. Coughlin</u>, 81 F.3d 313, 317 (2d Cir. 1996)(12 days of pre-hearing confinement in administrative segregation did not give rise to a liberty interest). For these reasons, Plaintiff's complaint will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

STANLEY R. CHESLER

15

**UNITED STATES DISTRICT JUDGE**

16